AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

A Cellular Telephone Described as a
Black iPhone in black case
with SIM Card:8901260182729227399 (Device #1)

)
)
)
)
)

Case No. **1:21-MJ-00402**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 846 and 841(a)(1) | Conspiracy to Possess and to Possess with Intent to Distribute a Controlled Substance. |

The application is based on these facts:

See Attached Affidavit

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kyle J. Wojcik, Task Force Officer DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____**FaceTime Video**_____ *(specify reliable electronic means).*

Date: ___**May 5, 2021**___

_____
*Judge's signature*

City and state: ___Cincinnati, Ohio___

Hon. Stephanie K. Bowman, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

**Property to Be Searched**

The Device is described as follows:

      1.      **Black iPhone in black case**
            **With SIM Card:     8901260182729227399 (Device #1)**

The Device is currently located at the DEA Cincinnati District Office, 36 East 7th Street, Suite 1900, Cincinnati, Ohio 45202.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of **21 U.S.C. §§ 841** and **846**, that involve **Joseph RILEY,** and other yet known and unknown individuals including:

a.      lists of customers and related identifying information;

b.      types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

c.      any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

d.      any and all photographs, electronic images, video recordings, and/or images saved and/or deleted on the cellular device evidencing drug trafficking or the use or possession of firearms;

e.      all text or SMS messages, to include incoming, outgoing, saved, deleted, and drafts evidencing drug trafficking or the use or possession of firearms;

f.      any and all data retrieved from Apps on the device that may have been used to facilitate drug trafficking or the use or possession of firearms;

g.      any information recording schedules or travel;

h.      any voicemails evidencing drug trafficking or the use or possession of firearms;

i.      any and all stored telephone numbers;

j.      Any and all emails, sent, received, delete, draft and/or saved evidencing drug trafficking of the use or possession of firearms;

k.      any and all entries made in a calendar and/or notebook feature evidencing drug trafficking or the use or possession of firearms;

l.      any and all personal numbers associated with the cellular device to include the telephone number, push-to-talk number, make, model, carrier, ESN, IMEI, ICCID, MEID, SEID, and or IMSI.

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF CELLULAR TELEPHONE DESCRIBED AS:   **Black iPhone in black case With SIM Card: 8901260182729227399 (Device #1)**<br><br>**White iPhone in black case With SIM Card: 8901240132723728582(Device #2)** | CASE NO.  **1:21-MJ-00402**<br><br><br>**<u>Filed Under Seal</u>** |

**AFFIDAVIT IN SUPPORT OF**
**<u>AN APPLICATION FOR A SEARCH WARRANT</u>**

I, Kyle J Wojcik, being first duly sworn, hereby depose and state as follows:

**<u>INTRODUCTION AND AGENT BACKGROUND</u>**

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.     I am a Detective with the Erlanger Police Department located in Kenton County, Kentucky and have been so employed since April 2013.  I have been police officer for over nine (9) years and have completed basic law enforcement training at the Kentucky Department of Criminal Justice Training and have since received extensive training in the investigation of offenses involving controlled substances.  I am currently assigned as a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) and have been since June, 2020. I was previously assigned to the Northern Kentucky Drug Strike Force (NKDSF) where my sole responsibility was to investigate drug offenses.  As a Task Force Officer of the DEA, my duties

and responsibilities have included conducting criminal investigations for violations of federal law, particularly those found in Title 21 and Title 18 of the United States Code. As a DEA Task Force Officer and narcotics detective, I have participated in over one hundred criminal investigations seeking evidence of violations of state drug violations and Federal Controlled Substances Act (Title 21 of the United States Code).

3.      By virtue of my involvement in drug investigations, I have become familiar with the various means and mechanisms used by narcotics traffickers to import and distribute controlled substances and to conduct their illicit business without being detected by law enforcement. I am familiar with the fact that drug traffickers make tremendous profits through drug trafficking, and require large amounts of currency to operate surreptitiously. In this regard, I have obtained and executed numerous search warrants pursuant to which I have seized ledgers, notebooks, papers, and other related record-keeping instruments, all of which been used to record multiple narcotics and related money laundering transactions, telephone books, diaries, invoices, beepers, cellular telephones and correspondence, all of which have contained evidence of narcotic trafficking and money laundering violations.

4.      During the course of my law enforcement career I have conducted and participated in the investigation of numerous criminal offenses, including those involved in the current investigation. I have participated in over one hundred illicit drug trafficking investigations, ranging from street level dealers to major drug suppliers. These investigations have included the unlawful importation, possession with intent to distribute and distribution of illegal substances, the related money laundering instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotics offenses. These investigations have resulted in the seizure of narcotics, arrests of suspects, their

prosecution, conviction and the seizure of large amounts of U.S. currency; and have involved: the use of confidential informants; undercover agents; the analysis of toll records; physical surveillances and the execution of search warrants. I have planned, participated in and supervised the execution of no fewer than 100 search warrants authorizing the search of drug traffickers, locations associated with drug traffickers and their co-conspirators, such as residences, businesses, storage facilities, outbuildings, safety deposit boxes, vehicles, telephones and electronic devices. I have testified in grand jury proceedings and have written reports and analyzed documents in the course of investigations.

5. I have been involved in post-arrest interviews of individuals, interviewed defendants in conjunction with post-arrest proffers, interviewed confidential informants and other non-defendant individuals with knowledge of illegal drug trafficking. During such interviews and discussions with other experienced agents, I have become familiar with the day-to-day operations of drug traffickers, distributors and transporters of controlled substances. I have gained knowledge regarding the various methods, techniques, codes, and/or jargon used by illegal drug traffickers in the course of their criminal activities, including the use of firearms to protect their narcotics related activities and the use of cellular telephones and personal digital assistants to facilitate communications while attempting to avoid law enforcement scrutiny.

6. As a result of my participation in these, and other activities, I have gained particular knowledge in the use of undercover agents, confidential informants, physical surveillance, consensual recordings, investigative interviews, mail covers, garbage searches, GPS tracking devices, and pole-mounted cameras. I have been required to analyze information resulting from traditional record sources, such as, financial records, utility records, and telephone toll and subscriber records. I have further been required to analyze nontraditional record sources, such as

the informal ledgers routinely maintained by narcotics traffickers listing amounts of drugs received from sources and distributed to customers and the amounts of money received from customers and owed to sources, commonly referred to as pay-owe sheets. I have also gained experience in the identification and collection of drug and non-drug evidence.

7. I am currently assigned to the Cincinnati District Office of the DEA. I've received specialized training that focuses on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations.

8. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

9. The property to be searched:

1. **Black iPhone in black case**
   **With SIM Card: 8901260182729227399 (Device #1)**

2. **White iPhone in black case**
   **With SIM Card: 8901240132723728582 (Device #2)**

Herein after referred to as the Devices.

10. The Devices are currently in the custody of DEA Cincinnati.

11.     The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## FACTS ESTABLISHING PROBABLE CAUSE

12.     On April 26, 2021, agents with DEA Cincinnati were asked to assist the Northern Kentucky Drug Strike Force with an investigation in which they seized approximately 5 pounds of crystal methamphetamine in Covington, Kentucky. The Northern Kentucky Drug Strike Force advised that they had a confidential source herein referred to as (CS#1) who provided information that Joseph RILEY was the source of supply of the crystal methamphetamine that was seized.

13.     On April 27, 2021, at approximately 9:50 a.m. DEA investigators established surveillance at 2009 Hewitt Avenue in Cincinnati, Ohio, which was believed to be an address associated with RILEY.

14.     At approximately 10:00 a.m. I observed a four door white sedan pull up and park on the street in front of 2009 Hewitt Avenue. I then observed a male black subject wearing a white t-shirt, grey pants, a red baseball cap exit the driver's seat of the vehicle carrying a full white plastic bag. I believed the male black subject to be RILEY. RILEY was then observed to walk around the side of the residence with the white plastic bag and out of sight.

15.     At approximately 10:02 a.m. I observed RILEY come back around from the side of the residence without the white plastic bag, walk up the front porch, and then walk through the front door. Once RILEY was inside, Task Force Officer (TFO) Anthony Jansen Jr drove down the street to try to obtain the license plate for the vehicle RILEY arrived in. TFO Jansen advised that the vehicle license plate was Ohio ELP 2308 and that it was a Hyundai Elantra. Upon further investigation it was found that the vehicle was a rental.

16.     At approximately 10:05 a.m. I observed RILEY walk out the front door, walk down to the street, get in the vehicle, and leave. TFO Jansen then began to conduct mobile surveillance of RILEY as other investigators were trying to follow. RILEY was last observed to be in the area of Observatory and Linwood. Investigators checked the area to try and locate RILEY, but were unable to.

17.     At approximately 2:45 p.m. Agents and Task Force Officers (TFOs) established surveillance in and around the parking garage of the Hilton Garden Inn at 2145 Dana Avenue in Cincinnati, Ohio. The establishment of surveillance was in anticipation of the arrival of the suspected source of crystal methamphetamine, Joseph RILEY.

18.     Prior to and during the surveillance establishment, a Northern Kentucky Drug Strike Force Confidential Source (CS#1) was communicating with a person believed to be RILEY via cellular phone in an attempt to purchase five pounds of methamphetamine. Upon RILEY's arrival in the parking garage of the Hilton Garden Inn, Agents planned on taking him into custody.

19.     At approximately 3:32 p.m., the vehicle RILEY was believed to be operating, a white Hyundai, was observed by Special Agent (SA) Tyler Field going down the ramp toward the parking garage of the Hilton Garden Inn.  At approximately the same time, CS#1 received communication via cellphone from the person believed to be RILEY, and he informed CS#1 he had arrived.

20.     The white vehicle stopped in close proximity to a van which contained several Agents/TFOs.  A male exited the white vehicle, and was recognized by SA Cameron Rice as RILEY.  SA Rice stated RILEY looked at the van intently for several seconds, and shut the driver's door. Agents/TFOs from the van exited and identified themselves as Police.  RILEY began running toward the exit of the garage and began to run up a nearby hill as Agents/TFOs briefly gave chase.

21.     At approximately 3:44 p.m., RILEY was placed into custody and search incident to arrest TFO Doug Eveslage located a FN 5.7 caliber pistol RILEY's right sweatpants leg. (It should be noted the pistol was loaded with one (1) round in the chamber.) Further search of RILEY's person led to the acquisition of a **Black iPhone in black case with SIM Card: 8901260182729227399 (Device #1)** by TFO Eveslage from RILEY's right pants pocket.

22.     A search of the vehicle that RILEY arrived in yielded a white plastic bag with five (5) clear bags of crystal substance. It was located inside a child's car seat positioned in the right rear passenger seat and acquired by TFO Anthony Jansen. Also located in the vehicle was a **White iPhone in black case with SIM Card: 8901240132723728582 (Device #2)** which was acquired by TFO Jansen from the vehicle. From my experience I know that drug traffickers utilize multiple phones to conduct business.

23.     A field test of the crystal substance tested positive for the presence of methamphetamine and the total weight of the (5) clear bags was approximately 2,494 grams

24.     The Devices have been seized and held as evidence at the DEA-Cincinnati District Office.

25.     Moreover, given the illegal possession of the controlled substance by Joseph RILEY, that RILEY was communicating with CS #1 via a cellphone, and based upon my experience and knowledge that drug traffickers commonly utilize multiple cellular telephones and often times utilize other cellphone applications and tools to further communicate about drug trafficking, I believe that Devices have been used in furtherance of drug trafficking activities and that evidence of drug trafficking will be recovered from the Devices.

**TECHNICAL TERMS**

26.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.      Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.      Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage

media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna

receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.　External Storage Device: An external storage device is a data storage device designed primarily to store and retrieve digital information and data including audio, video, or photographic files. External storage devices are often portable, and can include various features. Depending on the model, an external storage device may have the ability to store very large amounts of electronic data.

f.　IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.　Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

27.     Based on my training, experience, and research, I know that these types of devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, and a GPS navigation device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

28.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

29.     *Nature of* examination.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Subject Telephones consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

30.     *Manner of* execution.  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Kyle J. Wojcik
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on this    5th    day of May, 2021.
**via electronic means, specifically Facetime video.**

Stephanie K. Bowman
Hon Stephanie K. Bowman
United States Magistrate Judge

12

## ATTACHMENT A

### Property to Be Searched

The **Devices** are described as follows:

1. **Black iPhone in black case**
   **With SIM Card:**  **8901260182729227399 (Device #1)**

2. **White iPhone in black case**
   **With SIM Card:**  **8901240132723728582 (Device #2)**

The Devices are currently located at the DEA Cincinnati District Office, 36 East 7th Street, Suite 1900, Cincinnati, Ohio 45202.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.　　All records on the Devices described in Attachment A that relate to violations of **21 U.S.C. §§ 841** and **846**, that involve **Joseph RILEY,** and other yet known and unknown individuals including:

a.　　lists of customers and related identifying information;

b.　　types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

c.　　any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

d.　　any and all photographs, electronic images, video recordings, and/or images saved and/or deleted on the cellular device evidencing drug trafficking or the use or possession of firearms;

e.　　all text or SMS messages, to include incoming, outgoing, saved, deleted, and drafts evidencing drug trafficking or the use or possession of firearms;

f.　　any and all data retrieved from Apps on the device that may have been used to facilitate drug trafficking or the use or possession of firearms;

g.　　any information recording schedules or travel;

h.　　any voicemails evidencing drug trafficking or the use or possession of firearms;

i.　　any and all stored telephone numbers;

j.　　Any and all emails, sent, received, delete, draft and/or saved evidencing drug trafficking of the use or possession of firearms;

k.　　any and all entries made in a calendar and/or notebook feature evidencing drug trafficking or the use or possession of firearms;

l.      any and all personal numbers associated with the cellular device to include the telephone number, push-to-talk number, make, model, carrier, ESN, IMEI, ICCID, MEID, SEID, and or IMSI.

2.      Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.